UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| H. DOUGLAS WILLIAMS, Plaintiff, | ) | |
| vs. | ) | 1:07-cv-0615-LJM-WTL |
| THE BOARD OF SCHOOL TRUSTEES OF THE METROPOLITAN SCHOOL DISTRICT OF PERRY TOWNSHIP, SUSAN M. ADAMS, in her official and individual capacity, and NANCY WALSH, in her official and individual capacity, Defendants. | ) | |

**COURTROOM MINUTES**

**FOR TUESDAY, JUNE 5, 2007**

Parties appear with counsel, Joseph H. Yeager, Jr., April E. Sellers, and Allison S. Fetter-Herrott, for plaintiff, H. Douglas Williams ("Williams"); and Bernie W. Keller, and Jon M. Bailey, for defendants, the Board of School Trustees of the Metropolitan School District of Perry Township, Susan M. Adams ("Adams"), in her official and individual capacity, and Nancy Walsh ("Walsh"), in her official and individual capacity (defendants collectively, "Defendants"); for the continuation of a hearing on Defendants' Motion to Dismiss and Williams' Motion for Preliminary Injunction. The Court heard closing arguments on Williams' Motion for Preliminary Injunction.

After hearing the parties' arguments the Court **GRANTED** Plaintiff's Motion for a Preliminary Injunction as to defendant Nancy Walsh, and **DENIED** Plaintiff's Motion for a Preliminary Injunction as to defendant Susan M. Adams. In rendering its decision the Court made the following findings:

1. The proper standard for determining whether Williams had a likelihood of success on the merits of his claim that Board members Adams and Walsh

were unconstitutionally biased such that the hearing by the Board scheduled for Wednesday, June 6, 2007, would violate Williams' due process right to a fair and unbiased tribunal is enunciated in *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), and *Bakalis v. Golembeski*, 35 F.d 318, 326 (7th Cir. 1994). Specifically:

> . . . Not only is biased decisionmaking constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness." In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him.
>
> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudications has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the process is to be adequately implemented.

*Withrow*, 421 U.S. at 47. And,

> Partiality will not be presumed simply because the same tribunal investigates and adjudicates the employment decision. Furthermore, there is a presumption that those making decisions affecting the public are doing so in the public interest. However, bias and partiality become very real problems if the tribunal has been the target of criticism or abuse from those coming before it. Certainly, a body that has prejudged the outcome cannot render a decision that comports with due process.

*Bakalis*, 35 F.3d at 326.

2. With respect to Williams' likelihood of success on showing unconstitutional bias on the part of Adams, the Court specifically noted the internet posting of the time line of Board/Superintendent relations in Plaintiff's Exhibit 4, and the testimony at the hearing by Adams and plaintiff's witness Dr. William Buffie. The Court found that the evidence reflected Adams' struggle with what to do when she saw insubordination on the part of the Superintendent, Williams, and trying to determine what her rights were as a Board member and what his rights were under the employment contract and under Indiana statutes. The Court did not find the kind of rhetoric or overstepping of the policy/political line that amounts to the kind of bias that would compel a finding that Adams' participation in the hearing on June 6, 2007, would make the hearing unconstitutionally biased. The Court also concluded that Adams' statements that she could not vote to return Williams to a leadership role in the township were made in the context of her opposition to any proposal that would allow Williams to function as superintendent during pendency of the independent investigation; therefore, the Court found no bias on the part of Adams for having made those statements. For those reasons, the Court **DENIED** Williams' Motion for Preliminary Injunction with respect to an injunction that would prevent Adams from deliberating and voting at the hearing scheduled for June 6, 2007.

3. With respect to Williams' likelihood of success on showing unconstitutional bias on the part of Walsh, the Court specifically noted the factual reasons for

consideration of termination of Williams' superintendent's contract in the Boards' May 4, 2007, letter to Williams, and the number of those reasons that contained Walsh's name as the recipient of Williams' allegedly improper conduct. The Court also noted that Walsh had been in contact with the Board's independent investigator and may be a witness at the hearing. From the minutes of Board's December 18, 2006, meeting, the Court cited Walsh's statements regarding her son as the target of abuse by supporters of Williams and her discontent with Williams' supporters and with Williams; the Court also noted that Walsh repeated those statements at the hearing in this matter. In addition, the Court noted Walsh's testimony at the hearing about her meeting with Williams at the Chili's restaurant in Franklin, which showed Walsh's willingness to do her own independent fact finding, and at which she testified that she concluded that she could not work through her differences with Williams, in part, because of how lethal he could be to his enemies. The Court found that comment to evidence a pretty strong attitude against Williams. The Court also found credible the testimony of plaintiff's witness Samuel Hanley that Walsh had expressed to him her certainty that Williams would be gone before June 3, 2007; likewise, the Court found credible the testimony of plaintiff's witness Martha Fair that Walsh likened her own or the Board's relationship with Williams to a bad marriage; and the Court found credible the testimony of plaintiff's witness Kelly Butler that Walsh intended to get rid of Williams. In the balance, the Court differentiated

Walsh's actions from those of Adams, in that Walsh's statements and actions reflected an inappropriate probability of actual bias on the part of Walsh under the standard described in *Withrow*. The Court stated that he understood that Walsh knew the expectation of her was to remain unbiased, but it was too much to ask her to do so under the circumstances here. For those reasons, the Court **GRANTED** Williams' motion to enjoin Walsh from deliberating and voting at the June 6, 2007, hearing, although she may attend and be a witness if called at such hearing.

4. The Court concluded that, because of the risk of constitutional harm as enunciated by *Withrow* and *Bakalis*, an injunction fashioned in this matter would avoid the risk that Williams would be subjected to an unconstitutional hearing, a deprivation that would have no remedy at law.

5. The Court further concluded that a balance of Williams' and the Defendants' interests was achieved by this order because the prospect of bias has been eliminated and a quorum of individually elected officials who could properly discharge their responsibility to their constituents were in place to carry out the function of the Board.

6. Having found the potential for bias a probability in this case, the Court **DENIED** Defendants' Motion to Dismiss on the basis of the abstention doctrine found in *Younger v. Harris*, 401 U.S. 37 (1971), because of the extraordinary circumstances presented. "When the state tribunal is deemed to be biased or to have otherwise prejudged the controversy, abstention in

deference to the state proceeding under *Younger* is inappropriate." *See Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 295 (7th Cir. 1994) (citing *Withrow*, 421 U.S. at 44 n.8; *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973); *W.C.M. Window Co. v. Bernardi*, 730 F.2d 486, 491 (7th Cir. 1984); *United Chursh of Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 697-98 & n.3 (7th Cir. 1982)).

## CONCLUSION

For the reasons stated on the record at the hearing on this matter, and for the reasons stated herein, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction with respect to defendant Nancy Walsh, such that Ms. Walsh hereby shall be **ENJOINED** from deliberating and voting at the Board of School Trustees of the Metropolitan School District of Perry Township hearing scheduled for June 6, 2007, on the termination of plaintiff's, H. Douglas Williams, superintendent's contract and cancellation of his teacher's contract; and **DENIES** Plaintiff's Motion for Preliminary Injunction with respect to defendant Susan M. Adams. Defendants' Motion to Dismiss under *Younger v. Harris*, 401 U.S. 37 (1971), is **DENIED**.

Fred Pratt was Court Reporter.

IT IS SO ORDERED this 5th day of June, 2007.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Electronically distributed to:

Jon M. Bailey
BOSE MCKINNEY & EVANS, LLP
jbailey@boselaw.com

Allison Suzanne Fetter-Harrott
BAKER & DANIELS
allison.fetter-harrott@bakerd.com

Curtis T. Jones
BOSE MCKINNEY & EVANS, LLP
cjones@boselaw.com

Bernie W. Keller
BOSE MCKINNEY & EVANS, LLP
bkeller@boselaw.com

April Edwards Sellers
BAKER & DANIELS
april.sellers@bakerd.com

Joseph H. Yeager Jr
BAKER & DANIELS
jhyeager@bakerd.com